UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:19-CR-20603-COOKE/GOODMAN

UNITED STATES OF AMERICA

VS.

ABDUL-MAJEED MAROUF AHMED ALANI,
          DEFENDANT.
_____/

## DEFENDANT ALANI'S SENTENCING MEMORANDUM

COMES NOW Defendant, by and through undersigned counsel, who hereby submits his Sentencing Memorandum and respectfully requests the Court impose a sentence of thirty (30) months in the Bureau of Prisons.

### SUMMARY OF THE TOTAL OFFENSE LEVEL RECOMMENDATIONS

The Government and Defendant agreed to recommend to the Court that the Total Offense Level is 19 with a guideline range of thirty (30) to thirty-nine (39) months[1].  United States Probation maintains the Total Offense Level is 29 with a guideline range of eighty-seven (87) to one hundred eight (108) months[2].

Disagreement Over Applicable Guideline Section
Intentionally or Recklessly Endangering the Safety of an Aircraft

The Government and Defendant maintain that the applicable Guideline section for the offense committed by the defendant is found at U.S.S.G. Section 2A5.2(a)(2) (Interference with

---

[1] The parties' plea agreement recommends the Total Offense Level is 22 prior to any reduction for acceptance of responsibility.  The Total Offense Level is calculated as 19 after a 3-level reduction for acceptance of responsibility.

[2] United States Probation recommends the Total Offense Level is 29 after a 3-level reduction for acceptance of responsibility.  The Presentence Investigation Report finds that the defendant has clearly demonstrated acceptance of responsibility for the offense.  See Presentence Investigation Report ¶ 31.

Dispatch, Navigation, Operation or Maintenance of Mass Transportation Vehicle—recklessly endangering the safety of an aircraft), which provides for a base offense level of 18.

United States Probation submits that the applicable Guideline section for the offense committed by the defendant is found at U.S.S.G. Section 2A5.2(a)(1) (Interference with Dispatch, Navigation, Operation or Maintenance of Mass Transportation Vehicle—intentionally endangering the safety of an aircraft), which provides for a base offense level of 30.

INTRODUCTION

Defendant Alani entered into a plea agreement and pleaded guilty on December 18, 2019 to the indictment charging him with willfully attempting to damage, destroy, disable or wreck a civil aircraft used, operated or employed in interstate, overseas, or foreign air commerce in violation of Title 18, United States Code, Sections 32(a)(1) and (a)(8).

Pursuant to the plea agreement, the Government and Defendant agreed to jointly recommend to the Court that the applicable guideline for the offense committed by the defendant is § 2A5.2(a)(2), which provides a Base Offense Level of 18. See Plea Agreement, ¶ 6(a), ECF No. 26.

The Government and Defendant also agreed to jointly recommend to the Court that the Total Offense Level prior to any reduction for acceptance of responsibility is 22. See Plea Agreement, ¶ 6(d), ECF No. 26.

However, United States Probation ("Probation") has calculated Mr. Alani's Total Offense Level as 29 with a guideline range of eighty-seven (87) to one hundred eight (108) months. See Presentence Investigation Report (PSR) ¶ 87.

ARGUMENT

    1.    <u>Offense Level Computation</u>

        A.    Alani Requests the Court Adopt the Plea Agreement

Defendant Alani maintains the applicable base offense level is 18 and objects to Probation's application of a base offense of 30 for a violation of 18 U.S.C. § 32(a)(1) pursuant to United States Sentencing Guidelines Section 2A5.2(a)(1).  See Presentence Investigation Report (PSR) ¶ 24.

After extensive investigation, discovery and discussion, Defendant and the Government agreed Defendant did not intentionally endanger the safety of the plane.  Instead, Defendant's actions recklessly endangered the plane.  As such, Defendant and the Government agreed to jointly recommend to the Court that the applicable guideline for the offense committed by the defendant is § 2A5.2(a)(2), which provides a base offense level of 18.  See Plea Agreement, p.3, ECF No. 26.

The parties deeply considered the nature of the offense and the defendant's relevant offense conduct.  The parties agreed that a two-level upward variance was appropriate in this case.

Probation's application of §2A5.2(a)(1) necessitates a finding that the offense involved intentionally endangering the safety of an aircraft, a conclusion not supported by the evidence in this case.  The Presentence Investigation Report does not describe any facts to support a finding of intentional endangerment.

On the other hand, the parties' joint recommendation to the Court that Defendant's actions recklessly endangered the safety of an aircraft is wholly supported by the facts of the case. Defendant obstructed one of the aircraft's two air data module (ADM) systems with a piece of Styrofoam-like material. See Stipulated Factual Basis, p.1, ECF No. 27.  Before the aircraft entered

the runway and began the take-off process, the pilot observed an error message and returned to the gate for maintenance.  *Id*. at p.1-2.   Defendant stated his intention was not to cause harm to the aircraft or its passengers.  See *Id*. at p.4.  Defendant further admitted he tampered with the aircraft so it would <u>not</u> take-off.  See *Id*. at p. 5.  Defendant told investigators he intended only to cause a flight delay or have the flight cancelled in anticipation of obtaining overtime work.  *Id*.

The terms "intentionally" and "recklessly" are not defined in U.S.S.G. §2A5.2. However, "Reckless" is defined in the commentary to U.S.S.G. §2A1.4 (Involuntary Manslaughter) as "a situation where the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." USSG § 2A1.4, comment. (n.1).[3]

Defense counsel found only one case where a court applied the U.S.S.G. §2A5.2(a)(1) intentional endangerment standard.   In <u>*United States v. Bocook*</u>, 59 F.3d 167, 1995 U.S. App. LEXIS 15514 (4th Cir. 1995)(unpublished table decision), the Court upheld the application of §2A5.2(a)(1)(A) where the defendant broadcast unauthorized radio messages to aircraft and air traffic controllers.   For two months, he pretended to be an air traffic controller, and gave instructions to pilots who were preparing to land. At other times, he instructed incoming pilots to change frequencies, or to break off their approach. He told pilots they were not clear to land after they had been cleared to land by the tower and told pilots their runway was closed because of a disabled aircraft on the runway. Defendant also used obscene language, harassed a female air

---

[3] The United States Courts of Appeals for the Fourth and Eighth Circuits have also applied the definition of "recklessly" from § 2A1.4 in cases under § 2A5.2. See *United States v. Rogers*, 881 F.3d 1054, 1055-56 (8th Cir. 2018); *United States v. Clarkson*, 148 Fed. App'x 437, 441 (6th Cir. 2005)(unpublished); *United States v. Bocook*, 59 F.3d 167, [\*1176]  1995 WL 371250, at \*2 (4th Cir. 1995)(unpublished table decision)(applying the definition of recklessness in § 2A1.4).

traffic controller, made threats to shoot down aircraft, and transmitted recorded music and weather reports.

Defendant Alani's unsophisticated actions fall far below the depravity exhibited by the defendant in *Bocook* who acted with intent by perpetuating a ruse which went on for two months.

Courts have often applied the U.S.S.G. §2A5.2(a)(2) reckless endangerment standard in cases where the Defendant's actions have put passengers in danger by forcing planes to make unscheduled landings. Courts have also applied the U.S.S.G. §2A5.2(a)(2) reckless endangerment standard in cases where the Defendant threatened and attacked crew and passengers. Neither circumstance occurred in this case.

In *United States v. Gonzalez*, 492 F.3d 1031, 1037 (9th Cir. 2007), the Court held that diversion of an aircraft, behavior that instills fear and terror in the other passengers or the flight crew, and threats that could result in harm to the aircraft are sufficient to constitute reckless endangerment of the safety of the aircraft for purposes of U.S.S.G § 2A5.2(a)(2).

In *United States v. Guerrero*, 193 F. Supp. 2d 607, 608-610 (E.D.N.Y. 2002), the Defendant recklessly endangered the aircraft and passengers when intoxicated and unruly, he struck passengers and flight crew members, while threatening to kill people on the plane. The court held that Defendant further endangered the aircraft and passengers when he pushed the captain, because that exposed the aircraft and crew to the danger of having their captain incapacitated and ultimately resulted in the captain's decision to turn the plane around and return to New York. *Id*. at 610.

In *United States v. Jenny*, 7 F.3d 953 (10th Cir. 1993), the court affirmed the sentencing enhancement under § 2A5.2(a)(2) where the defendant cursed at the flight attendant and other passengers, made sexually suggestive remarks and gestures, grabbed a female flight attendant's

breast and a female passenger's arm, and approached the cockpit area and sat in the flight attendant's jump seat, among other things. Id. at 954-55. The captain was forced to make an unscheduled landing due to Defendant's conduct. *Id*. at 955.

Defendant Alani's behavior in this case, albeit reprehensible, falls far below the intentional endangerment standard exhibited in *United States v. Bocook*, 59 F.3d at 167. Moreover, Defendant Alani's actions do not rise to level of the Defendants who threatened and assaulted crew and passengers in the cases illustrated above where Courts have still applied the reckless endangerment standard.

The Presentence Investigation Report does not sufficiently describe conduct necessary to support a finding of intentional endangerment. To the contrary, the Presentence Investigation Report highlights Mr. Alani's assertion that he acted solely with a financial motive; conduct which supports a finding that Mr. Alani acted recklessly and never intended to intentionally put anyone in danger. "The defendant explained to law enforcement that he was upset at the stalled contract dispute between the union workers and AA, and that this dispute had affected him financially. The defendant claimed that he tampered with the Target Aircraft in order to cause a delay or have the flight cancelled in anticipation of obtaining overtime work." See Presentence Investigation Report, ¶ 19.

As such, there is no basis to support application of the more severe §2A5.2(a)(1) intentional endangerment standard and base offense level of 30 as requested by Probation.

Insofar as the Government and Defense agree that Defendant's actions recklessly endangered the aircraft under § 2A5.2(a)(2), Defendant respectfully requests the court adopt the parties recommendation that a base offense level of 18 should apply and grant the objection to Probation's recommended base offense level of 30.

B.      Expert Witness Opinion Rebuts Probation's Position Mr. Alani
        Intentionally Endangered Aircraft

In the Addendum to the Presentence Investigation Report, Probation maintains Mr. Alani's

actions resulted in the intentional endangerment of the aircraft and to those aboard.  See ECF No.

Document 31-1.

Defendant retained the services of Stephen Brandt, a retired commercial airline pilot, to

determine if the aircraft, crew and passengers were ever in any danger as a result of Mr. Alani's

actions.

Mr. Brandt has over 37 years of pilot experience with National Airlines, Pan Am Airlines

and Delta Airlines.  He has flown over 25,000 total flight hours.  He retired as a captain from Delta

Airlines in 2015.  He also is experienced in flying the same airplane affected by Mr. Alani, the

Boeing 737.  See Exhibit # 1 - Declaration of Stephen Brandt.

Mr. Brandt believes the warning systems on the airplane in this case performed exactly as

designed.

> When the pilot received an amber "Master Caution" and "ENG" warning on the
> glare shield of the cockpit, he correctly referred to the overhead panel where he saw
> the Electronic Engine Control (EEC) had reverted to the alternate mode.  At that
> point, the pilot had to return to the gate and could not take off.  According to all
> training, pre-flight checklists and simulations, returning to the gate was his only
> choice. I can think of no circumstances where a pilot would disregard the EEC
> message and proceed to take off.
>
> See Exhibit #1.

Even in the highly unlikely event the pilot decided to take off, Mr. Brandt believes the

plane was not in danger as a result of Mr. Alani's actions because of the back-up and redundant

systems.  See Exhibit #1.

7

> If the pilot disregarded all his training, simulations and protocols and taken off, the Boeing 737 has multiple back-up systems for equipment failures. The 737-800 has two separate pitot-static systems plus a standby system.  Any one of these systems is capable of flying the aircraft and providing information to the crew.  Because of these redundant systems, it is my opinion that there would have been no danger to the passengers and crew if the aircraft did in fact take off.

See Exhibit #1.

Mr. Brandt's opinion supports the conclusion that Defendant's actions recklessly endangered the aircraft under § 2A5.2(a)(2).  Accordingly, Defendant respectfully requests the court adopt the parties' recommendation that a base offense level of 18 should apply and grant the objection to Probation's recommended base offense level of 30.

2.     Who is Defendant Abdul Alani?

A.     <u>Acceptance of Responsibility</u>

Undeniably, Defendant Abdul Alani made a terrible choice on July 19, 2019 without thinking about the possible consequences to his family, the crew and passengers of American Airlines Flight No. 2834 or even himself.  However, Mr. Alani's criminal act does not define him or erase the good he has done for his 60 years on earth.  As noted in his Acceptance of Responsibility Letter, Mr. Alani makes no excuses and profusely apologizes for his actions.

> I am truly sorry for all the pain that I have caused to so many: my family, the people who were on board flight, American Airlines, and to the United States of America. I knew better and I am better than what I did. There is no excuse for what I did and I am so sorry.

See Exhibit #2.

The evidence overwhelmingly shows Mr. Alani committed this crime for financial gain rather than a nefarious or evil motive.  As much as Mr. Alani enjoyed a healthy and loving family life with his wife Flor and his four children, his financial life was falling part.

Despite being continuously employed in a good-paying job as an airline mechanic, Mr. Alani could not earn enough to support his family.  Mr. Alani was committed to paying for his children's college education so they would not be saddled with debt at graduation.  However, like many Americans, Mr. Alani just did not make enough money to pay the bills for his children's college education and his own household expenses.  In February 2018, Mr. Alani fell behind making payments and faced eviction proceedings for a house he rented in Orlando, Florida.  The eviction was finalized on January 3, 2019.  Subsequent to the eviction, Mr. Alani's wife and their children moved back to California.   After the move, Mr. Alani still worked in Miami and shared an apartment with co-workers.  On his time off, he would fly back to California to be with his family.  He commuted 3000 miles to work.

At the time of his arrest, Mr. Alani's total assets, including 2 used cars he purchased for his children, amounted to about $15,000.00.  He had a zero balance in both his checking and savings accounts.  His total net worth was about $8,000.00.  See Presentence Investigation Report ¶ 74.

In the couple of months before the incident, Mr. Alani worked as much as he could picking up extra-shifts, double-shifts and overtime whenever possible.   The extended hours (16-hour shifts) and travel back and forth to see his family took a physical and mental toll on him.  According to his wife Flor, Mr. Alani was not himself.  She believed he was suffering from sleep deprivation.  While not excuses, Mr. Alani's mental and physical fatigue, along with his dire financial

circumstances, can certainly explain why he may not have been thinking clearly when he committed this crime.

        B.    <u>Letters in Support</u>

Flor Alani and Mr. Alani, "Mikey" as she calls him, have been married for almost 30 years. Mrs. Alani described how her husband tirelessly tried to provide for the family.  See Exhibit #3.

> I have never come across anyone like my husband. He is a provider, a great contributor to his family and society, and he would take the shirt off his back for anyone. He literally worked day and night to provide for us. Especially the past few years while our four children were all enrolled in higher education. Abdul worked both day and night shifts totaling 16 hours a day.

Mrs. Alani further describes her husband's character.

> He is peaceful, kind, selfless, humble, never pretentious, and continues to teach people around him for the better. I have always been grateful for my husband and still am grateful for him even after this situation, because I know who he really is. He is an astonishing man that has always been law abiding but did commit a mistake that he is extremely sorry about.

Mr. Alani's youngest son, Ahmed, tells how his father was always a selfless person more concerned about the happiness and well-being of others.  See Exhibit #4.

> My father is an extremely selfless person and continues to take care of others before he takes care of himself.  Despite this one-time incident, I am grateful to have a role model like my father. He has taken in my friends and my siblings' friends without paying rent when they needed a place to stay. He is a considerate and compassionate man…. There were many times when my father would fly home to California for the weekends just to support one of my siblings or I at a soccer game. After the long commute and work shifts, sometimes he'd be falling asleep on the sidelines, but still wanting to coach us during the times he was awake.

Mr. Alani's other children, Sufian, Yousef and Jamila, all describe in detail how he was such a supportive, generous and loving father.  See Exhibits # 5,6,7.

Mr. Alani's brother-in-law, Dr. Samuel Lucha, relates how Mr. Alani supported him when he came to the United States by letting him stay in his home and buying him a car so he could drive to school over an hour away.  See Exhibit #8.

Very telling are the letters from Mr. Alani's former American Airlines co-workers Eddie Santos, Edgar Rodriguez, Lance Prevost, Layne Clark, Ricardo Burgos, John Boria and Tigist Ryals.  While all the co-workers condemn Mr. Alani's crime, they do not hesitate to laud his character, highlight his selflessness and celebrate his love and dedication for his family.

Eddie Santos, an American Airlines coworker who has known Mr. Alani for 8 years, refers to him as "Brother Alani" and says he is one of the greatest persons that he has ever met.  Mr. Santos speaks of Mr. Alani's dedication to his family, to his work and his colleagues.  He describes Mr. Alani as a person of great character who is always lending a helping hand when needed.   See Exhibit #9.

Edgar Rodriguez, an American Airlines coworker who has known Alani for 23 years, refers to Mr. Alani as "an extraordinary worker, responsible, friend", someone who "gave what he did not have for us."  Mr. Rodriguez says although Mr. Alani worked 16 hours a day to make money for his family, he was still cheerful.  See Exhibit #10.

Lance Prevost, an American Airlines coworker who has known Mr. Alani for 9 years, talks about his willingness to help and support others. "Some men will give you the shirt off their back, Brother Alani will give you shirt, pants and shoes."  He calls Mr. Alani loyal and trustworthy, a dedicated employee who made a conscientious effort daily to support others.  He also recalls Mr. Alani's motto was always "Brother I'll help you."  See Exhibit #11.

Layne Clark, an American Airlines coworker and roommate, describes Mr. Alani as someone who goes the extra mile to help you in any way that he can. "Abdul was like a father to the younger employees and a brother to the rest. He was and remains a very dear friend."   Mr. Clark remembers when Alani helped him with laundry and brought him things he needed while he was temporarily hospitalized.   "Even after Abdul was arrested, he asked his wife to contact me to pay half of the rent for the following month for our apartment…"  See Exhibit #12.

Ricardo Burgos, an American Airlines coworker who has known Mr. Alani for 8 years, describes him as a selfless person and coworker who has consistently shown love and care for others more than himself. This reputation earned him the respect and admiration of most of his coworkers at American Airlines.  See Exhibit #13.

John Boria, an American Airlines coworker, describes Mr. Alani as someone who is always willing to help others at work. He tells how Mr. Alani spent a lot of time at work, many times working double shifts to make ends meet and support his family.  See Exhibit #14.

3.     Other Considerations

Upon Mr. Alani's arrest, the government moved for pretrial detention.  The Court detained Mr. Alani as a risk of flight and a danger to the community.  Although bad, that wasn't the worst of it.  This was a highly publicized case with national media coverage.  Mr. Alani's reputation and character were smeared.  The media portrayed him as a terrorist or terrorist supporter.  Sample headlines included "American Airlines Mechanic Accused of Plane Sabotage May Have Ties to Terrorists, U.S. Says"[4], "American Airlines mechanic accused of sabotaging plane had ISIS video:

---

[4] New York Times, September 18, 2019.  See https://www.nytimes.com/2019/09/18/us/american-airlines-mechanic-isis.html

Prosecutors"[5], "American Airlines mechanic who allegedly sabotaged plane has ISIS ties, prosecutor says"[6], and "American Airlines mechanic accused of sabotaging plane denied bail over possible terrorist ties"[7].

As the months have passed since Mr. Alani's detention, no evidence was produced supporting the initial portrayal of Mr. Alani as a terrorist or a terrorist supporter or someone with any ties to terrorists whatsoever. Still, Probation has included mention of ISIS propaganda videos in Paragraph 20 of the Presentence Investigation Report with a disclaimer that "According to the government, at this time, an investigation has not corroborated the defendant as being involved with ISIS."

Defense counsel maintains this inclusion is wholly inappropriate and not relevant for sentencing purposes. It has no probative value and only serves to again denigrate the Defendant's character and place him in a negative light for sentencing. Defendant is confident that the Court will not give this allegation any weight in determining a fair and just sentence. Still, defense counsel requests the Court order United States Probation to delete Presentence Investigation Report ¶ 20 as unsubstantiated, irrelevant and unfairly prejudicial.

4.      Conclusion

Defendant respectfully asks this court to consider the totality of his life against the single criminal act he committed on July 19, 2019 and impose a sentence of thirty (30) months in the Bureau of Prisons.

---

[5] ABC News, September 18, 2019. See https://abcnews.go.com/Politics/american-airlines-mechanic-accused-sabotaging-plane-isis-video/story?id=65697821

[6] NBC News, September 18, 2019. See https://www.nbcnews.com/news/us-news/american-airlines-mechanic-who-allegedly-sabotaged-plane-has-isis-ties-n1056001

[7] Fox News, September 18, 2019, See https://www.foxnews.com/us/american-airlines-mechanic-accused-of-sabotaging-plane-denied-bail-over-possible-terrorist-ties

Respectfully submitted,

CHAPMAN LAW GROUP

/s/ *Jonathan Meltz*
Jonathan Meltz
FL Bar No.: 096504
Counsel for Defendant
Abdul-Majeed Marouf Ahmed Alani
1001 Brickell Bay Drive, Suite 1714
Miami, FL 33131
jmeltz@chapmanlawgroup.com
T: (305) 712-7177

## CERTIFICATE OF SERVICE

I, Jonathan Meltz, hereby certify that on February 28, 2020, I electronically filed Defendant's Sentencing Memorandum with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record.

/s/ *Jonathan Meltz*
Jonathan Meltz
FL Bar No.: 096504
Counsel for Defendant
Abdul-Majeed Marouf Ahmed Alani
jmeltz@chapmanlawgroup.com

14