UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-20603-CR-COOKE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ABDUL ALANI,

    Defendant.

_____/

## MOTION FOR COMPASSIONATE RELEASE

    Mr. Alani respectfully submits this motion seeking compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Specifically, Mr. Alani requests that the Court promptly resentence him to time served (approximately 8 months), with the remaining custodial portion of his sentence (approximately 24 months, accounting for good time credit) to be served in home confinement. As the Court is aware, we are in the midst of an unprecedented health crisis. Mr. Alani, suffers from a preexisting medical condition which makes him among those most vulnerable to suffer serious, if not fatal, complications were he to contract the COVID-19 virus.

    This memorandum contends that Mr. Alani's post-sentencing release is appropriate under Title 18, U.S.C. § 3145 which empowers this Court to order his release.

## BACKGROUND

Mr. Alani was arrested on September 5, 2019 and charged in a single count indictment of attempted destruction of an aircraft operated in interstate, overseas or foreign air commerce pursuant to Title 18 U.S.C. §32(a)(1) and (a)(8). He was denied bond and has remained in custody since his arrest. He pleaded guilty on December 18, 2019 and was sentenced on March 4, 2020 to 37 months in prison followed by three years of supervised release. Although Mr. Alani was designated to a facility outside of Florida, Mr. Alani remains at the FDC Miami pending his relocation to the designated facility.

A. The COVID-19 Pandemic

The United States and the world are currently in the midst of a serious and urgent public health crisis. On March 11, 2020, the World Health Organization officially classified COVID-19, a new strain of coronavirus, as a global pandemic.[1] As of two weeks ago, the Centers for Disease Control and Prevention (CDC) reported that COVID-19 has infected over 180,000 people across the United States, leading to more than 3,600 deaths.[2] The CDC and other public health organizations have identified individuals who are particularly susceptible to COVID-19, and who are at the greatest risk for life-threatening consequences should they contract it. These higher risk categories include older adults; individuals with HIV or other immune-

---

[1] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (Mar. 11, 2020), available at https://bit.ly/2W8dwpS.
[2] See CDC, *Cases in U.S.*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

compromising diseases; those with asthma and lung disease; and those with hypertension.[3]

According to information gathered from the Bureau of Prisons website, as of the preparation of this motion, there have been 4084 reported cases in the BOP out of a population of 151, 083 which provides for a 2.7031% infection rate. (DE 36-1).

B.  Mr. Alani's Serious Health Conditions

Mr. Alani is 60 years old. He squarely falls within the CDC's high-risk classification:  he is 60 years or older, he suffers from reoccurring bronchitis, with which he has battled for years. As described in the medical records which will be provided confidentially to the court and opposing counsel, Mr. Alani has suffered from chronic bronchitis and respiratory problems. Some may have been as a result of his work at American Airlines as an airline mechanic where he was regularly exposed to jet fuel fumes and which aggravated his condition.

Although it was a reoccurring condition which Mr. Alani treated as needed, that condition can potentially be a death sentence if he were to come in contact with the COVID-19 virus, given that the virus attacks the respiratory system.[4] Upon being

---

[3] See CDC, *Are You at Higher Risk for Severe Illness?*, *available at*https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html;Anna Miller, et al., *10 common health conditions that may increase risk of death from the coronavirus, including diabetes and heart disease*, Business Insider (Mar. 23, 2020) (collecting scientific reports of disease), *available at* https://www.businessinsider.com/hypertension-diabetes-conditions-that-make-coronavirus-more-deadly-2020-3.

[4] Moderate to Sever Asthma and chronic lung diseases place a person at higher risk of complications from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#asthma

informed that Mr. Alani was in federal custody and in conditions where he was not able to satisfactorily social distance himself from other inmates, his treating doctor wrote a brief letter describing Mr. Alani's condition. (DE 36-2). Undersigned counsel followed up by requesting the supporting medical records, which as already noted, will be provided confidentially and will be referred to as Exhibit 1, and which describe a history of reoccurring bronchitis. In addition, counsel will provide medical records from other treating doctors in 2017 and 2018 which demonstrate a chronic respiratory condition. (Exhibits 2 and 3).

### C. The First Step Act and this Court's Expansive Authority to Reduce a Sentence

Under a section of the recently-enacted First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), a sentencing court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment …, after considering the factors set forth in §3553(a) to the extent that they are applicable, if it finds that

> (i) extraordinary and compelling reasons warrant such a reduction; …
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

18 U.S.C. §3582(c)(1)(A).

The relevant Sentencing Commission policy statement defines "extraordinary and compelling reasons" to include a defendant's medical conditions, age, family circumstances, and "other reasons." *See* U.S.S.G. § 1B1.13, Application Note 1. The Commission also requires that the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Fundamentally, the First Step Act's changes to the compassionate release regime - titled "Increasing the Use and Transparency of Compassionate Release" - were designed to help get more eligible, non-dangerous individuals out of prison. "The First Step [Act] was passed against the backdrop of a documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants." *United States v. Redd*, No. 97 Cr. 06 (AJT), 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). "Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions …." *United States v. Young*, No. 00 Cr. 02 (AAT), 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020). The First Step Act sought to expand the use of compassionate release in two primary ways: First, the Act empowers defendants to petition district courts directly, rather than having to wait for the Bureau of Prisons to act. Second and relatedly, it shifts greater discretion to district courts to determine what constitutes "extraordinary and compelling" reasons for a sentence reduction under the statute. Essentially, with the First Step Act, Congress empowered the judiciary to take on the role the BOP once held as the functional adjudicator of compassionate release requests and enabled courts to grant

5

sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the statute.

As a result, by the plain terms of the statute, a district court's authority to reduce a sentence pursuant to this provision is expansive: a district court may reduce a defendant's prison sentence after considering the 18 U.S.C. §3553(a) factors if it finds "extraordinary and compelling" reasons for a reduction; that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and that the defendant does not present a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A); *see also, e.g.*, *United States v. Wong Chi Fai*, No. 93 Cr. 1340 (RJD), 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019). Nothing more is required.

In particular, the weight of authority makes clear that a court's power to reduce a sentence and grant compassionate release is not limited by Bureau of Prisons policies, or even by the specific factors enumerated by the Sentencing Commission in U.S.S.G. §1B1.13, Application Note 1(A)-(C). Most courts to consider the issue have found that district courts can reduce sentences for reasons "consistent" with Commission guidance, and that courts now stand in place of the Bureau of Prisons for purposes of the Guidelines' "catch-all" provision in U.S.S.G. §1B1.13 Application Note 1(D). Courts therefore have expansive authority to define for themselves what constitutes "extraordinary and compelling" reasons to reduce a sentence.

Based on this authority, district courts have reduced sentences for a variety of reasons - even if the reductions are opposed by the Bureau of Prisons and even if the

reasons do not fit neatly into the Sentencing Commission's specifically enumerated reasons. *See, e.g.*, *Redd*, 2020 WL 1248493 at *8, n.18 (collecting cases regarding court's authority and reducing sentence based on severity of defendant's "stacked" §924(c) sentences); *Young*, 2020 WL 1047815 at *5-6 (granting compassionate release and rejecting government argument that defendant's motion should be denied because he did not meet the medical criteria in U.S.S.G. §1B1.13, finding that "district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release"); *United States v. Maumau*, No. 08 Cr. 758 (TC), 2020 WL 806121, at *6 (D. Utah Feb. 18, 2020) (granting compassionate release based on severity of sentence and defendant's young age at the time of the offenses); *United States v. Urkevich*, No. 03 Cr. 37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (granting motion and reducing sentence based on original sentence's undue severity); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (granting release because defendant was the sole available caregiver for his ailing mother, though Commission only listed caregiving for a partner, spouse, or minor child); *United States v. Beck*, No. 13 Cr. 186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (finding that "[w]hile the [Sentencing Commission's] old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction" and granting release based on BOP's mismanagement of defendant's medical care). A district court's order must be "consistent" with the Sentencing Commission's guidance—but a court is not limited to the specific enumerated

7

examples set forth by the Commission in finding "extraordinary and compelling" reasons for release.

This very court has recognized the dangers in *Untied States v. Nieves Suarez*, Case No. 18-20175-Cr-Cooke. Additionally, courts around the country are increasingly using this provision to grant compassionate release and reduce a defendant's sentence based on the unique dangers posed to defendant's by COVID-19. Indeed, specific to pre-existing respiratory conditions in particular, courts have held that the threat of contracting COVID-19 is grounds for granting relief around the country. See, *United States v. Williams*, 3:17-CR-121-(VAB)-1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020) (granting compassionate release to a defendant with asthma, hypertension, a history of kidney issues, and other medical conditions); *United States v. Gorai*, 2:18-cr-00220-JCM-CWH-1, 2020 WL 1975372 (D. Nev. Apr. 24, 2020) (granting compassionate release to a 34-year-old defendant with asthma as the only listed medical condition); *United States v. Park*, 16-cr-473 (RA), 2020 WL 1970603 (S.D. N.Y. Apr. 24, 2020) (granting compassionate release to a 44-year-old defendant with asthma); *United States v. Tillman*, 1:07-cr-00197-PLM-1, 2020 WL 1950835 (W.D. Mich. Apr. 23, 2020) (granting compassionate release to a defendant with asthma and diabetes); *United States v. Gileno*, 3:19-cr-161-(VAB)-1, 2020 WL 1904666 (D. Conn. Apr. 17, 2020); *United States v. Samy*, 2:16-cr-20610-AJT-DRG-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020); *United States v. Ben-Yhwh*, CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); *United States v. Smith*, 1:12-cr-00133-JFK-1, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); *United States v. Wen*,

6:17-CR-06173 EAW, 2020 WL 1845104 (W.D. N.Y. Apr. 13, 2020); *United States v. Tran*, 8:08-cr-00197-DOC-1, 2020 WL 1820520 (C.D. Cal. Apr. 10, 2020); *United States v. Burrill*, 17-CR-00491-RS-2, 2020 WL 1846788 (N.D. Cal. Apr. 10, 2020); *United States v. McCarthy*, 3:17-cr-00230-JCH-1, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); *United States v. Hernandez*, 1:18-cr-00834-PAE-4, 2020 WL 1684062 (S.D. N.Y. Apr. 2, 2020); *United States v. Powell*, No. 1:94-cr-316-ESH, 2020 WL 1698194 (D.D.C. Mar. 28, 2020).

   D. Mr. Alani's Application to the Bureau of Prisons

On April 18, 2020, Mr. Alani's daughter submitted a letter to the warden at FDC Miami asking for compassionate release of her father based on his medical condition and his age. In addition, on May 2, 2020, Mr. Alani submitted an internal request to the Bureau of Prisons to be released to serve the remainder of his sentence under home confinement because of his preexisting health conditions and the dangers that he faced as a result of COVID-19. (DE 36-3). On May 6, 2020, Mr. Alani was advised that the request was denied. (DE 36-4). Specifically, the BOP representative denied the request based on the nature of the offense, citing that Mr. Alani had been convicted of a crime of violence and a terrorist act. He was not. His crime was attempted destruction of an aircraft operated in interstate, overseas or foreign air commerce. He was never charged with any crime involving violence, terrorism, or a terrorist act. While the United States tried heartily to imply that Mr. Alani's motives were terrorist driven, ostensibly because he is an Iraqi-born Muslim, naturalized U.S. Citizen. However, as this court noted at the sentencing hearing:

> THE COURT: Now, did I miss something in the indictment because the indictment doesn't charge anything related to terrorist or terrorist activity.
>
> MR. HUMMEL: That is correct, Your Honor, it is a charge of under the 18 U.S.C. 32, which is Destructive tampering with Aircraft, and that's what it was brought under. The connection that was talked about in – this is actually the first time I have seen this.
>
> THE COURT: Yes, I made a point of showing them to counsel because I didn't want at some other time that someone would think somehow I was influenced by letters that called this case a terrorist case and counsel was unaware of them.  I even shared with you one that was actually mailed….
>
> MR. HUMMEL:  …..I will tell the Court that that was investigated.  We do not have a linkage of Mr. Alani to being a member of ISIS.
>
> THE COURT: So, let's -- I want the record to be clear. The United States viewed those materials, you engaged in an investigation surrounding this defendant and the United States did not feel they had sufficient evidence to proceed with any other charge other than the one contained in the indictment?
>
> MR. HUMMEL: That would be correct, Your Honor.

(See the Sentencing Hearing Transcript, attached here as DE 36-5, pages 2 – 4. It was ordered but not docketed). As such, reliance by the Warden at FDC Miami on a determination that Mr. Alani does not qualify for Compassionate Release based on

the nature of his offense is incorrect. At this point, he has exhausted his administrative remedies and in addition, more than 30 days have passed since he requested the release.

However, even if there was further action to be taken by Mr. Alani through the BOP, the court is not bound by a determination as to whether Mr. Alani has exhausted his administrative remedies. See, *United States v. William H. Minor, Jr.*, Case No. 18-Cr—80152-Middlebrooks ("Although § 3582(c)(1)(A) plainly imposes an administrative exhaustion requirement, the United States Supreme Court has held that, even in such circumstances, an exception exists where "the interests of the individual weigh heavily against requiring administrative exhaustion." *See McCarthy v. Madigan*, 503 U.S. 140, 146 (1992); *see also Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) ("Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute."). One such exception exists where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." *McCarthy*, 503 U.S. at 146–47 (1992)).

## ARGUMENT

This Court should resentence Mr. Alani's so that he can be immediately released from prison. The Court should convert the remaining sentence to home confinement by imposing a sentence of time served and 3 years of supervised release with a condition of approximately 24 months of home confinement (to expire on his currently

11

projected release date of April 21, 2022). This Court has the authority to make this reduction; this reduction would be fully consistent with the compassionate release statute and the 18 U.S.C. § 3553(a) sentencing factors; and this reduction is necessary to protect Mr. Alani's life and health.

A. <u>Because of an ongoing emergency, the Court should hear Mr. Alani's application to reduce her sentence now.</u>

As reflected in the statutory language, a defendant can apply directly to the sentencing court for compassionate release, even if the Bureau of Prisons declines to bring a motion on his behalf. Per the statute, Mr. Alani may apply directly to this Court 30 days after the BOP warden receives his request or after he has exhausted his administrative remedies, whichever is earlier. Although 30 days has not yet passed since Mr. Alani made his internal request, that request has been denied. At this time, we submit that this is an emergency situation in which the Court is empowered to immediately hear Mr. Alani's application.

Federal courts have previously found that they can hear applications prior to the expiration of 30 days (or the exhaustion of administrative remedies) if there is some emergency. See *United States v. James Arberry*, No. 15 Cr. 594 (JPO), ECF Docket No. 84 (S.D.N.Y. Nov. 12, 2019) (hearing and granting emergency compassionate release application of prisoner with cancer). This accords with general administrative law principles and the exception to administrative exhaustion requirements in numerous statutory schemes. See, e.g., *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (waiving requirement to exhaust administrative remedies where

"exceptional circumstances of peculiar urgency are shown to exist") (citing *Granberry v. Greer*, 481 U.S. 129 (1987)); *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019) (finding that administrative exhaustion requirements can be waived if delay would cause irreparable injury); *Maxwell v. New York Univ.*, 407 F. App'x 524, 527 (2d Cir. 2010) (same).

More specifically, courts, in bulk, now have recognized that COVID-19 is an emergency situation and have waived the exhaustion requirements to grant immediate compassionate release. See *United States v. Agustin Francisco Huneeus*, No. 19 Cr. 10117 (IT), ECF Docket No. 642 (D. Mass. Mar. 17, 2020) (granting defendant's emergency motion based on COVID-19); *United States v. Wilson Perez*, No. 17 Cr. 513 (AT), ECF Docket No. 98, (S.D.N.Y. Apr. 1, 2020) (granting release Case 1:16-cr-00473-RA based on health issues and finding court could waive exhaustion requirement; government did not object based on defendant's medical conditions); *United States v. Eli Dana*, No. 14 Cr. 405 (JMF), ECF Docket No. 108 (S.D.N.Y. Mar. 31, 2020) (granting compassionate release motion without exhaustion of administrative remedies, where government consented); *United States v. Jose Maria Marin*, No. 15 Cr. 252 (PKC), ECF Docket No. 1325-1326 (E.D.N.Y. Mar. 30, 2020) (waiving exhaustion requirement and granting compassionate release to defendant based on special risks he faced from COVID-19); *United States v. Teresa Ann Gonzalez*, No. 18 Cr. 232 (TOR), ECF Docket No. 834 (E.D. Wa. Mar. 25, 2020) (waiving any further exhaustion attempts as futile and granting compassionate release based on defendant's health issues and COVID-19 pandemic*); United States*

13

*v. Pedro Muniz*, No. 09 Cr. 199, ECF Docket No. 578 (S.D. Tex. Mar. 30, 2020) (granting compassionate release based on health conditions that made inmate susceptible to COVID-19; inmate had pending application, so had exhausted admin process); *United States v. Samuel H. Powell*, No. 94 Cr. 316 (ESH), ECF Docket No. 97 (D.D.C. Mar. 27, 2020) (granting compassionate release for 55-year old defendant with respiratory problems in light of outbreak, without waiting for 30 days or other exhaustion of administrative remedies through the BOP).

This is an emergency situation. Every additional day that Mr. Alani spends at FDC Miami increases the likelihood that he will contract COVID-19 if/when COVID-19 is detected there and he could fall ill. Any delay in hearing this motion will cause irreparable injury to Mr. Alani.

B. <u>The Court should grant Mr. Alani's compassionate release.</u>

On the merits, this Court should grant Mr. Alani's motion to immediately reduce his sentence, so that he can be released from prison. First, there are extraordinary and compelling reasons to grant this reduction. Because of his unique health issues, Mr. Alani faces a severe risk of contracting COVID-19 and suffering life-threatening consequences and complications if he does contract this disease. He is 60 years old and has precisely the kind of preexisting condition which makes him most vulnerable to the lethal effects of contracting COVID-19: a respiratory vulnerability. Under the current conditions at FDC Miami, he has very little ability to protect himself from contracting the disease and becoming severely ill. Because of the conditions of his confinement, he cannot avoid contact with infected areas or people, and cannot take

basic steps to ward off the disease. He obviously has no ability to self-isolate and no access to protective gear, or even basic hygiene supplies.

In a very similar case, a judge in the Southern District of New York released a 44-year old defendant with asthma, see *United States v. Park*, 16-cr-473(RA), 2020 WL1970603 (S.D.N.Y. Apr. 24, 2020)(Ms. Park's medical conditions are precisely those that render a person increasingly likely to suffer a serious and potentially fatal case of COVID-19, if contracted. According to the Center for Disease Control and Prevention (the "CDC"), people with ailments that cause trouble breathing, particularly asthma, or compromise their immune system are at a significantly higher risk. See Center for Disease Control and Prevention, *Coronavrius Disease 2019 (COVID-19)*: *People with Asthma* (Apr. 24, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/asthma.html ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."); Center for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): *At Risk for Severe Illness* (Apr. 24, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groupsat-higher-risk.html (explaining that "people of any age who have serious underlying medical conditions," including those with "[a]sthma (moderate-to-severe)," "[c]hronic lung disease," "[s]erious heart conditions," and conditions that can cause a person to be "immunocompromised").)

Second, granting this reduction would be completely consistent with the § 3553(a) factors and the other statutory prerequisites for compassionate release. This

15

application is based on a combination of Mr. Alani's health and the other unique factors described above—in that regard, it is perfectly consistent with the Sentencing Commission's guidance and easily fits within the "other reasons" contemplated by Application Note 1(D).

Further, Mr. Alani is a nonviolent offender who does not present any danger to the community. His offense was motivated by frustration with the labor union and their inability to negotiate better pay for the airline employees at a time when he was financially in crisis.

The court may recall that Mr. Alani is married and the father of 4 children. He explained to the court that despite having a good-paying job as an airline mechanic, Mr. Alani could not earn enough to support his family. He was committed to paying for his children's college education so they would not be saddled with debt at graduation, but he simply could not afford that commitment and provide for his expenses. [DE 32]. In a moment of desperation, he thought to create a situation that would require him to work overtime and earn extra money. It was foolish, shortsighted, and hardly a long-term solution to his problem but he made that decision in a moment of desperation. However, he never placed anyone in real danger, as explained by the expert witness who provided sworn testimony for the sentencing hearing. He testified and explained that the system did precisely what he knew it would do – sound an alarm – that would require the mechanic crew to spend time repairing the problem and thereby, earning overtime pay. [DE 32-1].

16

At this time, he has been designated to FCI Jessup in Georgia and would still require transportation under conditions that cannot possibly guarantee basic protection from exposure to other individuals who may have contracted the virus. See Declaration of Doctor Jaimie Meyer (DE 36-6), which was filed in *Foreman v. United States*, 3:20-cv-555-VAB (April 24, 2020). See also Affidavit of Brie Williams, M.D. (DE 36-7).

Outside the prison walls, Mr. Alani also enjoys strong support. He has been married to Flor Alani for 28 years and they have 4 children together ages: 25, 23, 22, and 20. All the family members have been consistently and steadfastly supportive of Mr. Alani throughout the litigation of the criminal case and now post-sentencing. Mr. Alani's children all wrote letters prior to his sentencing hearing which this court considered. Since the outbreak of the COVID-19 pandemic, his daughter Jamila Alani petitioned this Court to consider compassionate release for her father. (DE 36-8). In addition, Representative Darren Soto, Member of the House of Representative for the 9th District of Florida, also petitioned the FDC Miami for compassionate release. In the letter, Representative Soto references the pre-existing respiratory condition Mr. Alani has and, correctly notes that Mr. Alani's conviction was for a non-violent crime. (DE 36-9).

While Mr. Alani has not served a significant portion of his sentence, the last 6 months of the time he has served have been under particularly punitive and difficult conditions. The post-quarantine conditions have resulted in complete lock-down conditions FDC, limited access to phone privileges, no access to computer privileges,

no visitation at all, and no outdoor exposure. These months served in heightened lockdown, coupled with his continuing home incarceration, should be completely sufficient for purposes of punishment and general deterrence.

With respect to specific deterrence and rehabilitation, Mr. Alani has repeatedly expressed sincere remorse for his offense. Although he was denied bond, the main reason for the denial was the United States' reference to "terrorism" for which there was no evidence. Ultimately, the United States was never able to produce any evidence of any ties to any terrorist group or activities, notwithstanding their efforts to fully investigate any connection between Mr. Alani and support for terrorism. Apart from the United States unsubstantiated reference to terrorism, Mr. Alani presented no danger to the community and no risk of recidivism. Mr. Alani can certainly reside safely in the community. If released, he has a stable residence to which to return and has treating doctors at the ready.

C. <u>The Court does not need to wait for Mr. Alani to complete a significant portion of his sentence</u>

To the extent that the government may argue that the defendant has not served a significant portion of his sentence, Ms. Alani notes that across the country, courts are resentencing defendants who have not completed significant portions of their sentence. See, *United States v. Bess*, Case No. 1:16-cr-156, Dkt. No. 97 (W.D.N.Y. Apr. 22, 2020) (releasing defendant less than one year into a term of imprisonment of 84 months in light of the "substantial risk" that unless the Court "lowers Bess's sentence . . . he will become seriously ill and, with an unsettlingly high degree of

probability, serve a life sentence"); see also *United States v. Curtis*, Case No. 1:03-cr-533-BAH, Dkt. No. 238 (D.D.C. Apr. 22, 2020) (reducing six life sentences of child sex trafficker with a prior sex offense on his record to time-served in light of serious risks to his health); See *United States v. Logan*, 1:12-cr-307, DKt. No. 179 (N.D.N.Y. Apr. 22, 2020) (releasing defendant 5 years into 148-month sentence due to COVID-19 vulnerability); *United States v. Ben-Yhwh*, __F. Supp. 3d__, 2020 WL 1874125, at * (D. Haw. Apr. 13, 2020) (releasing defendant eight months into a 60-month sentence because, in light of his vulnerability to COVID-19, "prolong[ing] . . . his incarceration further . . . would be unnecessarily cruel"); *United States v. Rodriguez*, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (Rice, J.) (releasing defendant approximately 1 month into her prison sentence because her "age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable" to COVID-19)

Then, as recently as yesterday, news outlets reported that Paul Manafort, who had only completed a fraction of his sentence, had been released under a compassionate release request. https://www.thedailybeast.com/paul-manafort-released-from-prison-to-escape-coronavirus-says-report?via=ios.

D. <u>Local Rule 88.9(a)(1) Certification</u>

Undersigned counsel contacted Assistant United States Attorney Randy Hummel for his position on this request. He has requested an opportunity to review the medical records prior to providing a position on the motion. Undersigned counsel will forward those to him and to the court in a separate e-mail correspondence in light of the personal information contained in those documents.

## CONCLUSION

For the reasons described above, and considering all of the statutory factors, the Court should immediately grant Mr. Alani's motion to reduce his sentence, and resentence him to time served, with three years of supervised release, with a special condition of twenty-four months of home confinement during this supervised release term.

RESPECTFULLY SUBMITTED

CELESTE SIBLESZ HIGGINS, ESQ.
*/s/Celeste S. Higgins*
Florida Bar No. 909718
1001 Brickell Bay Drive, Suite 1200
Miami, Florida 33131
Tel: (786) 643-8263
E-Mail: celeste@chigginslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2020, undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Celeste S. Higgins*
