**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 19-20603-CR-COOKE**

**UNITED STATES OF AMERICA,**

vs.

**ABDUL-MAJEED MAROUF**
**AHMED ALANI,**

    **Defendant.**
_____/

**GOVERNMENT'S RESPONSE IN OPPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C § 3582(c)(1)(A)(i)**

The United States files this response in opposition to DE 37, which is Defendant Abdul-Majeed Marouf Alani's (hereinafter, simply "Alani") motion for compassionate release. In said motion, Alani asks this Court to exercise its discretion to reduce his sentence to time served, with a special condition of 24 months of supervised release served in home confinement.

Alani premises his request for release on 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) permits the Court, under certain circumstances, to reduce a defendant's term of imprisonment if, after considering the factors under 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." For the reasons set forth below, the government respectfully requests that the Court deny Alani's motion.

## I. BACKGROUND

    A.    *Alani's Basic Biographical Information and Custodial Status*

Per page 3 of his PSI, Alani is 60 years' old. Per paragraph 57 of his PSI, Alani initially entered the United States in 1979 from Iraq on a student Visa. He subsequently reentered the

United States in 1985 and became a naturalized U.S. citizen in 1992. Until the time of his arrest in this case (September 5, 2019), Alani had been employed as a full-time airline mechanic by American Airlines since 1988 (PSI, paragraph 66). In other words, Alani was fully employed and considered able bodied by American all the way up to the date of his arrest in this case.

Alani is presently serving a 37-month sentence for the offense of willfully attempting to damage, destroy, disable and wreck a civil aircraft of the United States in violation of Title 18, United States Code Section 32, a sentence that incorporated both a two level upward variance and the high end of the sentencing range at that adjusted offense level. The Court adjudicated that sentence at a March 4, 2020 sentencing hearing. With credit for time served in pre-trial confinement, Alani has a pending release date from the Federal Bureau of Prisons of April 21, 2022. He is currently housed (and has been housed since his arrest) at FDC-Miami.

  B. *<u>Offense Conduct</u>*

At the time he committed the crime in this case, July 17, 2019, Alani was an avionics mechanic working for American Airlines (AA) at Miami International Airport (MIA). In that capacity, he was one of the employees entrusted by the company with ensuring the safety of the commercial aircraft employed by AA to fly commercial passengers in and out of MIA to/from locations around the country and around the world. Alani abused that trust and sabotaged the guidance system of one of American's commercial passenger jets (AA Flight 2834) by (through his own later admission) deliberately placing an obstruction in one part of that system.

During his interview by law enforcement on September 5, 2019, where he made that admission, Alani claimed to the interviewing agents that he did so simply because he was upset at American Airlines over its stalled contract negotiations with his union and had suffered financial harm from that. He then further explained that through deliberately tampering with the guidance

system of the plane so it could not carry out its flight plan and proceed to its scheduled destination (the Bahamas), he anticipated being able to pick up overtime work by fixing the very plane he had just disabled. Significantly, while professing to the agents that he had not intended to harm the aircraft or its passengers, when asked by them, point-blank, if he would allow any of his family members or himself to fly on a plane tampered with in the fashion that he had done to Flight 2834, Alani quickly stated "no."

### C. *Alani's Motion*

Alani claims that because he allegedly has "a history of recurring bronchitis" and is 60 years old (DE 37, motion at p.3)[1] he is uniquely vulnerable to the COVID-19 virus while incarcerated with BOP at FDC-Miami. Alani asserts in his motion that these two factors place him "squarely within the CDC's high risk classification" (*id.*)[2]. His motion lists no other objective factors that distinguish him from the many other similarly situated offenders also currently in BOP custody.[3]

### D. *Alani's Prior Administrative Request for Reduction of His Sentence*

As acknowledged by Alani in his motion (motion at p.12; DE 37-4), and as reflected in BOP records as of May 25, 2020, he has made one request to BOP for a release from their custody

---

[1] The undersigned has received Alani's current medical records from the Bureau of Prisons (FDC-Miami). To preserve the confidentiality of defendant's medical records, as Alani's counsel has done to preserve the confidentiality of her client's other, older, medical records from 2013 to 17 supplied to the Court, said records are being provided separately from this response to the Court and counsel through same means used by opposing counsel. Said records cover the entire 8 month period that defendant has been in the custody with BOP and reflect neither any complaints by Alani of suffering from bronchitis, nor any reports by him to the FDC-Miami medical staff of any other respiratory issues.

[2] Age 60 is not listed as a high risk factor by the Center for Disease Control (CDC). The CDC lists Age 65 and above as one of the enhanced risk factors. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html#risk-assessment. While "chronic lung disease" is listed as one of the CDC's serious medical conditions, and "chronic bronchitis" is a chronic lung disease, in order to be classified as having that chronic condition, an individual must have experienced the following symptoms: 1) cough and mucus for most days for at least 3 months a year, for two years in a row; and, 2) other causes of symptoms, such as tuberculosis or other lung diseases, must be ruled out. https://www.hopkinsmedicine.org/health/conditions-and-diseases/chronic-bronchitis. None of Alani's medical records reflect any diagnosis of chronic bronchitis or a medical history that would support such a diagnosis.

[3] BOP, according to its most recent published statistics, currently houses over 19,000 federal inmates within Alani's age group (56-60) or older.

3

and placement in home confinement. Alani made that request in a form he submitted in writing to his case manager on May 2, 2020. The case manager rejected that request on May 6, 2020 on the basis that his "charge was a violent and a terrorist act." (DE 37-4).[4] There is no record that the undersigned AUSA has found documenting further action by Alani to appeal that determination by the case manager to any higher level, such as the FDC-Miami Warden.

### E.     BOP COVID-19 Mitigation Plan

FDC-Miami, like all BOP facilities, has had a comprehensive BOP COVID-19 mitigation plan in place since March 13, 2020. In summary, that plan includes as follows:

All newly arriving BOP inmates are screened for COVID-19 exposure and risk factors and symptoms. Asymptomatic inmates with exposure risk factors are quarantined. Symptomatic inmates are isolated and tested for COVID-19 per local health authority protocols.

Social visits are suspended. In order to ensure that familial relationships are maintained throughout this disruption, inmates' telephone allowance has been increased to 500 minutes per month.

Inmate movement is suspended – subject to certain exceptions, including medical and mental health treatment and residential re-entry center placements.

Legal visits are suspended, although access to counsel is being accommodated to the extent practicable.

Volunteer visits also are suspended, with limited exceptions. Inmates who wish to speak with a legal advisor are instructed to make a request through their unit team.

---

[4] Bureau of Prisons Program Statement Number P5162.05 (March 16, 2009), "Categorization of Offenses," used to determine whether an inmate will be eligible for certain programs, lists certain federal crimes as "Criminal Offenses that are Crimes of Violence in *All Cases*.:" (Emphasis in original).  Said crimes are identified in the program statement in Section 3a.  Title 18, United States Code Section 32 is listed in Section 3a.(1) as one of those categorical crimes of violence.

F.  *Population at FDC-Miami and Incidence of COVID-19*

Based upon information on the BOP's website, as of May 25, 2020, FDC-Miami houses 1,028 federal pretrial detainees/sentenced defendants. The BOP website also reflects that as of May 25, 2020, FDC-Miami has had no detainees/inmates who have had positive tests for COVID-19. Information on the website does show that 13 FDC-Miami staff had tested positive for the virus, with 5 staff members listed as having recovered.

II.  **RELEVANT STATUTE AND SENTENCING GUIDELINE PROVISIONS**

A.  *18 U.S.C. § 3582(c)(1)(A)*

As noted earlier, Alani's motion is premised upon § 3582(c)(1)(A), which states as follows:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is

5

> > currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Under § 3582(c)(1)(A)(i), a defendant must show "extraordinary and compelling reasons" that warrant the requested reduction.

### B. *U.S.S.G. § 1B1.13*

As quoted in the previous subsection, § 3582(c)(1)(A) requires that the requested "reduction [be] consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's relevant policy statement is contained in U.S.S.G. § 1B1.13. Under the facts of this case, § 1B1.13 is relevant in two respects.

First, § 1B1.13(2) prescribes that courts not reduce a defendant's sentence under § 3582(c)(1)(A) if the defendant poses a risk of danger to others. *See* § 1B1.13(2) (setting out findings necessary to support sentencing reduction under statute to include finding that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)").

Second, Application Note 1 to § 1B1.13 elaborates upon the meaning of "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). The application note, which is quoted in pertinent part below, identifies the type of medical or age-related conditions that may constitute "extraordinary and compelling reasons" for compassionate release under § 3582(c)(1)(A). In so doing, the application note illustrates the Sentencing Commission's view that "extraordinary and compelling reasons" under § 3582(c)(1)(A) means serious and irreversible conditions:

1. <u>Extraordinary and Compelling Reasons</u>.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) <u>Medical Condition of the Defendant</u>.—

        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is—

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) <u>Age of the Defendant</u>.—The defendant
        (i) is at least 65 years old;
        (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
        (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.[5]

---

[5]The remainder of the application note contains two additional subsections, (C) and (D), neither of which appear to be relevant to the case before the Court. These two subsections, which are quoted in full below, include the following circumstances as "extraordinary and compelling reasons" that can warrant relief under § 3582(c)(1)(A)

    (C) <u>Family Circumstances</u>.

7

### III. LEGAL ANALYSIS

#### A. *Alani Has Not Exhausted His Administrative Remedies.*

Based upon its plain language, § 3582(c)(1)(A) precludes resort to the Court until a defendant has fully exhausted administrative rights to appeal a failure by BOP to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. As noted in Section I.D. of this response, Alani made one request to BOP for release from its custody to home confinement on May 2, 2020 and it was denied by his case manager on May 6, 2020 (DE 37-4). There are no records that the undersigned has received from BOP, nor is there any allegation made by Alani in his motion, that he has made any effort to even begin to exhaust his administrative remedies by seeking, for example, review of that determination by the FDC-Miami warden .

As a result, Alani is not eligible for relief based on the COVID-19 outbreak now, because, as he ultimately acknowledges (see Motion at p.12), he has not completed his requested release claims to the BOP, exhausted administrative remedies for any BOP response to a COVID-19 claim, or allowed 30 days to lapse from any submission to the BOP of a claim concerning COVID-19.[6] *See United States v. Raia*, No. 20-1033, --- F.3d ---, slip op. at *2, 2020 WL 1647922 (3d Cir.

---

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

[6] Alani ultimately concedes this point, after first making an earlier attempt in his motion (Motion at p.9) to suggest that a request by his daughter to the FDC-Miami Warden in April to release him from BOP custody means that he has

Apr. 2, 2020)(denying remand to allow district court's consideration of compassionate release COVID-19 claim, since remand was futile where the defendant had not made request to BOP); *United States v. Holden*, No. 3:13-cr-00444-BR at *6-10, 2020WL 1673440 (D. Ore. Apr. 6, 2020)(surveying COVID-19 decisions and ruling that defendant's failure to pursue such a claim with BOP precluded relief*); United States v. Zwyotko*, Case No. 2:19-cr-113-FtM-60NPM at *1, 20 WL 1492900 (M.D. Ga. Mar. 27, 2020) (defendant's COVID-19 motion was "legally insufficient" where it did not show defendant made request to BOP) (and cases cited therein); *United States v. Sundblad*, Case No. 6:16-cr-00047-JMC at *2, 2020 WL 1650041 (D.S.C. Apr. 1. 2020) (court lacked requisite legal authority to reduce sentence under theory of compassionate release where defendant had not first petitioned BOP); *United States v. Williams*, No. JKB-15-0646 at *1, 2020 WL 1506222 (D. Md. Mar. 30, 2020) (denying COVID-19 compassionate release claim for failure to exhaust). In *Raia*, the court of appeals described Section 3582's administrative requirements as "a glaring roadblock foreclosing compassionate release" where the defendant had not made a request to the BOP. 2020 WL 1492900 at *2. The opinion further explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added— and critical—importance.

---

exhausted his administrative remedies and/or has allowed 30 days to lapse from any submission to the BOP of a claim concerning COVID-19. Of course, that request was not an administrative remedy request cognizable by BOP. The actual administrative remedy request (which made no specific COVID-19 request in it, see DE 37-4) that was properly recognized by BOP was Alani's May 2nd request that, as he acknowledges, was considered and denied by his case manager on or about May 6, 2020 (DE 37-5).

*Id. See also Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (finding that "mandatory exhaustion statutes ... establish mandatory exhaustion regimes, foreclosing judicial discretion"); *United States v. Gross*, No. 15-cr-769(AJN) at *2, 2020 WL 1673244 (S.D.N.Y. Apr. 6, 2020) (court would not rule on COVID-19 compassionate release motion until expiration of 30 days provided for BOP consideration of prisoner's request); *United States v. Shores*, No. 19-80055-CR-WPD (S.D.Fla. Apr. 1, 2020)(DE 52) (denying emergency motion for compassionate release; opining that neither the mere existence of COVID-19 within the BOP, or its presence in the facility housing the defendant warranted reduction of 30-day waiting period, and that perhaps even the defendant testing positive does not).

### B. *The Instant Motion Fails on the Merits.*

As set forth above in this response, in order for the instant motion to prevail on the merits § 3582(c)(1)(A)(i)'s plain language requires that the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable. . . fin[d] that . . . extraordinary and compelling reasons warrant [the requested] reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (which are set forth in § 1B1.13 of the Sentencing Guidelines).  The instant motion does not meet this showing.

#### 1. *Alani's Motion Does Not Demonstrate "Extraordinary and Compelling Reasons" Supporting the Requested Reduction*

Even if Alani's COVID-19 argument is considered on its merits, it fails to justify the extraordinary relief he seeks. Alani has not established circumstances that are extraordinary and compelling because of the virus. He does not claim he has contracted the virus. He is one of many inmates at his particular BOP location, and further, of his age group or older within BOP.  Alani does not credibly explain how he differs from any number of the other inmates there who confront

10

the same degree of risk of exposure to the virus. Moreover, there has always been the potential for the spread of infectious disease in a detention facility, even before the onset of COVID-19.

A nebulous claim of the possibility of "recurring bronchitis" hardly rises to the level of an "extraordinary" or "compelling" serious medical condition, as those terms have been defined by the Sentencing Commission[7]. One diagnosis and case of acute bronchitis over a seven year period falls far below a diagnosis of, or the existence of, chronic bronchitis and, consequently fails alone, or in combination with the rest of Alani's medical records, to establish that he is uniquely at risk for COVID-19 under the CDC guidelines, or otherwise, while incarcerated with the BOP.

Courts have repeatedly ruled that invocation of the COVID-19 outbreak alone is not sufficient reason for a sentencing reduction. *See United States v. Houlihan*, No. 16-CR-20715 (S.D. Fl. May 18, 2020) (mere existence of the virus is not reason alone to find defendant's circumstances warrant release to home confinement where there is no evidence defendant is undergoing intensive treatment or BOP is unable to manage his present health issues). *See, also,e.g., Raia* at *2 ("the possibility that it [COVID-19] may spread to a particular prison alone cannot independently justify compassionate release"); *United States v. Eberhart*, No. 13-cr-00313-PJH-1 at *2, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020)(general concerns about the spread of COVID-19 are insufficient to show extraordinary and compelling grounds for compassionate release); *United States v. Clark*, No. 17-85-SDD-RLB at *4-5, 2020 WL 1557397 (M.D. La. Apr.

---

[7] As referenced in footnote 1 of this pleading, Alani's BOP medical records from FDC-Miami do not reflect: 1) Any complaints of respiratory problems by defendant; 2) Any diagnosis of any respiratory problems of the defendant by BOP medical personnel; and, 3) Any indications of any other lung problems or respiratory deficits for the past 8-9 months. In a similar vein, the medical records Alani has submitted himself to the Court show only the following: 1) Three incidences of pharyngitis or sinusitis and an otherwise unspecified upper respiratory infection (URI) in 2013, the last of which was on March 21, 2013; 2) One doctor's visit in 2014 where the primary assessment was listed as "allergic reaction"; 3) Two visits in 2015, with first one listed as being for "sciatica" (with no noted respiratory issues) and the second simply listed as being for an unspecified sickness; and, 4) One diagnosis of acute bronchitis in 2017 and one for a viral URI in December 2018 (DE 37, Exhibits 1,2, and 3). In other words, the medical records before this Court show only one actual documented diagnosis of bronchitis that occurred over 3 years ago, and, moreover, that Alani has exhibited no symptoms of that ailment, or any other lung problem, since being in BOP custody.

1, 2020) (same, notwithstanding defendant's high-risk status); *United States v. Lowry*, No. 18-CR-882 at *2, 2020 WL 1674060 (S.D.N.Y. Apr. 6, 2020)(supervised release defendant's COVID-19 high-risk status because of respiratory condition did not amount to extraordinary and compelling reasons for compassionate release).

Under circumstances where generalized COVID-19 concerns present Federal Courts with the possibility of a lesser remedy, releasing a defendant on bond, most Courts considering such motions in light of COVID-19 have nevertheless ruled that detention is appropriate in that context. *See, e.g., United States v. Winchester*, Case No. 1:18CR301-1, 2020 WL 1515683 (M.D.N.C. Mar. 30, 2020); *United States v. Rollins*, Case No. 19-CR-34S, 2020 WL 1482323 (W.D.N.Y. Mar. 27, 2020); *United States v. Morris*, Case No. 17-107(01) (DWF/TNL), 2020 U.S. Dist. LEXIS 52690 (D. Minn. Mar. 26, 2020); *United States v. Adams*, Case No. 19-257-003, 2020 U.S. Dist. LEXIS 51729 (D. Md. Mar. 25, 2020); *United States v. Thompson*, Case No. 4:19-cr-40014, 2020 U.S. Dist. LEXIS 51272 (D. Ar. Mar. 25, 2020); *United States v. Hartsell*, --- F. Supp. ---, 2020 WL 1482175 (N.D. Ind. Mar. 25, 2020); *United States v. Fitzgerald*, Case No. 2:17-cr-00295-JCM-NJK, 2020 WL 1433932 (D. Nev. Mar. 24, 2020). In fact, following the only trial conviction in this district after the emergence of COVID-19, Judge Cohn continued to detain pending sentencing a health care fraud defendant following his conviction at trial. *United States v. Sebastian Ahmed*, Case No. 19-cr-60200-JIC (S.D. Fla. Mar. 24, 2020); see also *United States v. Foster*, Case No. 19-cr-20804-AHS (S.D. Fla. Mar. 24, 2020) (denying request for pretrial release from custody based on COVID-19). The prevalence of these cases reflect a consistent view by Federal Courts that Alani's only real argument in this case for his release, the generalized danger of COVID-19 to federal prisoners, is neither extraordinary nor rare.

Alani's COVID-19 contentions also conflict with the provisions of U.S.S.G. § 1B1.13, comment. (n. 1(A)(i-ii)), concerning claims based on a defendant's medical condition. Any option under this provision is premised on a medical condition the inmate is either "suffering" or "experiencing". *Id*. While Alani offers speculation in his motion and its attachments about his chances of experiencing a recurrence of bronchitis and thereafter contracting the virus, he is not currently experiencing or suffering from any form of bronchitis, nor has he since incarcerated. Section 3582 and the Supreme Court's ruling in *Dillon v. United States*, 560 U.S. 817, 827 (2010), have made this commentary binding.[8] Therefore, this Court should reject Alani's argument simply on this basis.

### 2. *Relevant Factors Under 18 U.S.C. § 3553(a) Support Denying Alani's Motion*

Alani's continued imprisonment is consistent with § 3553(a)'s objectives. Continued imprisonment "reflects the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). As this Court noted at Alani's sentencing hearing when addressing the seriousness of the crime that he had committed:

> I think all of us, and the defendant included, stated he would not want to fly on the plane with the part as constituted that he put on the plane. There were approximately 150 people with passengers and crew on board that flight, and I cannot even think about had there been some unfortunate calamity what would have happened in terms of loss of life or injury, and that's what I am looking at in terms of the potential for damage in this case as well as the charges.

(DE 37-5:16-17).

---

[8] (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court)(*Id.*).

Nothing in the scant few months that have elapsed since Alani's sentencing hearing has altered the significance of these considerations that prompted the Court to issue its sentence. Alani has served only approximately one-quarter of the sentence that this Court thoughtfully reached for a very troubling crime. Nothing in his motion warrants erasing three-quarters of that sentence.

Alani's continued incarceration also carries out § 3553(a)'s objective of protecting the public from further crimes of the defendant. *See id.* § 3553(a)(2)(B). If Alani's claimed reason for taking the extraordinary step of gambling with the lives of the 150 passengers and crew of American Airlines flight 2834; anger at the airline over being hurt financially by them, fully explains his actions in this case, there is real concern for protection of the public. Acting in that fashion, for that motivation, accompanied by a lack of hesitation over putting multiple lives at risk, depicts someone who has the capacity to lash out in completely unpredictable ways when frustrated or angry, without regard for the collateral damage that may be inflicted.

## CONCLUSION

For all of the above reasons, this Court should deny Alani's motion.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: /s/ *Randy A. Hummel*_____
    Assistant United States Attorney
    Florida Bar Number 973378
    99 Northeast 4th Street
    Miami, Florida 33132

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Randy A. Hummel*
Assistant United States Attorney